IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LULEY RAMADAN MUSA, Administrator for the Estate of Yonis Kabiro Said, 793 Canonby Place, Apt. 2B Columbus, Ohio 43223 | : | |
| | : | CASE NO. 2:25-cv-807 |
| Plaintiff, | : | |
| | : | **Civil Complaint** |
| v. | : | |
| | : | **Jury Demand Endorsed Herein** |
| KIA AMERICA, INC., c/o CT Corporation System 4400 Easton Commons Way, Suite 125 Columbus, Ohio 43219 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Now comes Plaintiff Luley Ramadan Musa, Administrator for the Estate of Yonis Kabiro Said, by and through undersigned counsel, and for her Complaint against Defendant Kia America states as follows:

### NATURE OF ACTION AND JURISDICTION

1. This is a civil action seeking damages against Defendant for committing acts and omissions which directly and proximately caused serious physical harm and death to Plaintiff's son, Yonis Kabiro Said.

2. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

3. Venue in this Court is appropriate under 28 U.S.C. §§ 115(b)(2) and 1391(b)(2). The actions complained of took place within this judicial district; all evidence and police

1

reports relevant to Plaintiff's claims are maintained in this judicial district; and Defendant regularly conducts its affairs in this judicial district.

## PARTIES

4. At all times relevant hereto, Plaintiff and her son, Yonis Kabiro Said, were residents of Franklin County, Ohio.

5. Upon information and belief, Defendant Kia America, Inc. (hereinafter "Kia") is a California for profit corporation that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606. Defendant Kia America, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, vehicles for personal, commercial, and other use in the United States.

6. Kia is licensed to do business in the state of Ohio and has appointed its statutory agent as CT Corporation System located at 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

7. Kia has transacted business and/or committed tortious acts within the state of Ohio. Specifically, Defendant designed, manufactured, distributed, and/or sold dangerous and/or defective vehicles in Ohio. Defendant placed its defective vehicles and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Ohio from which Plaintiff's claims arise.

## BACKGROUND

8. Plaintiff seeks to recover damages for catastrophic injuries suffered by her son, Yonis Kabiro Said, which ultimately led to his death, and which were sustained in a motor vehicle collision which occurred on July 22, 2023, in Franklin County, Ohio.

9. Yonis was the victim of a public nuisance created by Kia through its manufacture and sale of defective vehicles. Specifically, Defendant manufactured and sold vehicles that were easy to steal, including a Kia Soul that was driven by a car thief and fatally injured Yonis. Through its reckless and dangerous efforts to put profits ahead of safety, Kia disregarded industry safety standards and produced vehicles that failed to meet National Highway Transportation Safety Administration ("NHTSA") safety standards, including but not limited to Federal Motor Vehicle Safety Standard 114. These defects created a public nuisance that interfered with Plaintiff's, and other members of the public's, health, welfare, and safety.

10. Upon information and belief, the design flaws in Defendant's vehicles, such as the Kia Soul involved in the fatal collision of July 22, 2023, have allowed thieves to steal Kia vehicles in less than ninety seconds. These design flaws included: (i) steering columns which did not contain adequate secure collars or casings, and thereby allowed easy access to the ignition assembly; (ii) ignition lock cylinders which did not have a locking mechanism and could be easily removed with minimal force, leaving the ignition switch intact; (iii) exposed ignition switches which could be started with any set of pliers, or even a simple USB connector; and (iv) a lack of engine immobilizers.

11. There is an inextricable link between preventing vehicle theft and protecting public safety. Making sure cars are not easy to steal both protects property and protects the public by keeping dangerous drivers in stolen vehicles off the roads. This case is a clear example of

what happens when a car manufacturer cannot be bothered to follow federal safety standards regarding anti-theft technology.

12. In most automobiles, the ignition key emits a radio signal that prompts a computer to disengage an immobilizer device and allows the car to move when the key is present. Kia models are a glaring exception.

13. While other car manufacturers were incorporating immobilizer technology to ensure that car ignitions could not be started without keys, Defendant Kia America, Inc. failed to do so in the United States. As a result, TikTok and news videos teaching the relative ease with which Kia vehicles could be stolen have gone viral. In many cases, the thieves use tools no more advanced than a USB cable. Kia's decision to reduce costs and boost profits by foregoing common anti-theft technology has resulted in an epidemic of thefts of Kia vehicles. This vehicular crime wave has had a significant impact on public safety throughout Ohio and, in fact, the entire country.

14. Kia has failed to install vehicle immobilizers in most of their cars sold in the United States, despite installing such technology in vehicles produced and sold in the European and Canadian markets.

15. As early as 1968, the Department of Transportation and the Department of Justice concluded that amateur thieves stealing cars to go joy-riding make up a significant portion of all auto thefts in America. Moreover, those thieves could steal cars using simple means, such a pair of pliers, to remove the ignition lock. That is why simple measures such as the installation of an immobilizer were so effective at preventing the majority of auto thefts.

16. Kia's decision to put cost-savings and profits over public safety has had devastating consequences to Columbus and its residents. The failure of Kia to install industry-standard

4

anti-theft devices, notwithstanding decades of academic literature and research supporting the deterrent effects of such technology, has opened the floodgates to vehicle theft, crime sprees, reckless driving, and public harm.

17. This epidemic of vehicle thefts was spurred on by a viral TikTok challenge started in 2021. Videos demonstrating the ease by which Kia vehicles could be stolen were also posted on YouTube. As a result, Columbus vehicle thefts rose from approximately 6,400 in 2021, to 7,800 in 2022, to 10,660 in 2023.

18. Upon information and belief, approximately 45% to 50% of all stolen vehicles in Columbus during the relevant period were manufactured by Kia and/or Hyundai.

19. Car thefts imperil public safety. By creating a rash of car thefts, Defendant is responsible for a substantial risk to public safety.

20. Reckless driving threatens the comfortable enjoyment of life, health, and safety of the public throughout the Columbus area. Distinct from many instances of car theft, where the object is converting the stolen vehicle, the viral "Kia challenge" typically involves joyriding and then abandoning the stolen vehicles. This dangerous social phenomenon, made possible exclusively through Defendant's unsecure vehicles, has led numerous youths to post videos of reckless driving and then abandon the vehicles after collisions.

21. On July 22, 2023, Tyrell Shute was driving a stolen Kia Soul on Greenfield Drive in Columbus, Ohio. Officers attempted to conduct a traffic stop but Mr. Shute did not comply. Instead, he sped away from the officers, thereby initiating a high-speed chase through Southpark Apartment Complex.

22. Nearing Canonby Place, and in an effort to further elude police, Mr. Shute jumped the curb. He drove the stolen Kia onto a grassy yard, heading straight toward four-year-old Yonis

and his mother. Mr. Shute struck Yonis, then continued driving a short distance before exiting the vehicle and fleeing from law enforcement officers on foot.

23. This action is brought by Plaintiff, Administrator for the Estate of Yonis Kabiro Said, by virtue of an Order of the Probate Court of Franklin County, Ohio and pursuant to the provisions of R.C. 2125.01, *et seq*.

### FIRST CAUSE OF ACTION
### COMMON LAW ABSOLUTE PUBLIC NUISANCE

24. Plaintiff incorporates each preceding paragraph as fully rewritten herein.

25. A "public nuisance" is an unreasonable interference with a right common to the general public, including the rights to public health and public safety.

26. Defendant's conduct constitutes a public nuisance that threatened the safety, welfare, and comfort of Plaintiff, her son, and other area residents.

27. Defendant has created and maintained a public nuisance by manufacturing and distributing automobiles that were dangerously susceptible to theft, including the Kia Soul that struck and killed Plaintiff's son, thus interfering with the public safety, health, and welfare of Yonis and other area residents. Yonis and other area residents had a right to be free from such conduct and to be free from conduct that creates a disturbance and reasonable apprehension of danger to person and property.

28. In 2023, approximately half of all cars which were reported stolen in Columbus, Ohio, were Kia or Hyundai models. These thefts were often associated with reckless driving offenses, accidents, injuries, and fatalities. The extremely dangerous nature of Defendant's products led the City of Columbus to file a lawsuit against Kia and Hyundai.

29. By continuing to distribute automobiles lacking any basic security measures, Kia has affirmatively and intentionally disregarded NHTSA safety advice and knowingly exacerbated the danger posed by car thieves and joyriders.

30. Kia's abject failure to include any meaningful immobilizer or anti-theft technology in their automobiles has led not only to an increase in vehicular thefts and serious car-related injuries in the Columbus area, but also unreasonably interfered with Yonis' right to public safety and directly and proximately caused the collision, as well as Yonis' injuries and death.

31. Kia's conduct constitutes an absolute public nuisance because it intentionally violated FMVSS (see Paragraph 9), which specifically requires automobiles to be equipped with a starting system which, upon removal of the key, prevents "steering, or forward self-mobility, of the vehicle, or both" as well as a "transmission or gear selection control [which] cannot move from the 'park' position, unless the key is in the starting system."

32. Defendant knew that its conduct not only caused, but in fact facilitated, an explosive increase in vehicle thefts.

33. It was not only reasonably foreseeable, but guaranteed, that that Defendant's actions and omissions would result in a public nuisance and cause harm to Plaintiff and other Ohio residents.

34. The harm suffered by Yonis is even greater than that suffered by the general public. At only four years of age, he was the victim of a violent vehicular collision which resulted in his death.

**SECOND CAUSE OF ACTION**
**COMMON LAW QUALIFIED PUBLIC NUISANCE**

35. Plaintiff incorporates each of the preceding paragraphs as if fully rewritten herein.

36. Defendant created and maintained a public nuisance by manufacturing and distributing automobiles, including the Kia Soul involved in this matter, that were dangerously susceptible to theft, thus interfering with the public health, welfare, and safety of Yonis and other Ohio residents. Plaintiff, her son, and other Ohio residents have a common right to be free from such conduct and to be free from conduct that creates a disturbance and reasonable apprehension of danger to persons and property.

37. The public nuisance created by Kia was a qualified public nuisance because Defendant negligently engaged in conduct or omissions which endangered or injured the health, safety, or comfort of Plaintiff's son and other area residents.

38. Defendant had a duty to exercise ordinary care and/or reasonable care in the design, research, development, manufacture, testing, sale, and distribution of their vehicles into the stream of commerce, including a duty to exercise care to assure that the vehicles were safe and equipped with industry-standard anti-theft measures.

39. At all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known, of the hazards and dangers of foregoing installation of engine immobilizers, as well as other industry-standard anti-theft measures, which increased risk of vehicle theft and public harm.

40. At all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known, that the omission of an engine immobilizer and other industry standard anti-theft measures could cause injuries and thus created a dangerous and unreasonable risk of injury to Plaintiff, Yonis, and other area residents.

41. Defendant, by action and inaction, breached its duty and failed to exercise reasonable care, and failed to act as a reasonably prudent person and/or company would act under the same

circumstances in the design, research, development, manufacture, testing, sale, and distribution of its vehicles, and the Defendant manufactured vehicles that fell below minimum industry-standard security measures. Defendant is thus liable for creating a public nuisance because of its intentional and unreasonable conduct.

42. As a direct and proximate result of Defendant's wrongful acts and omissions, Yonis was the victim of a violent vehicular collision and lost his life.

43. The injuries and harm suffered by Plaintiff's son are unique and different than any injury suffered by the general public by virtue of the public nuisance created by Defendant. The fatal injuries suffered by Yonis as a direct and proximate result of Defendant's public nuisance have not been incurred by the general public. The physical pain and mental anguish incurred by his family as a result of Defendant's public nuisance have not been incurred by the general public.

### THIRD CAUSE OF ACTION
### NEGLIGENCE

44. Plaintiff incorporates each of the preceding paragraphs as if fully rewritten herein.

45. At all times relevant to this litigation, Defendant Kia had a duty to act as a reasonably prudent person and/or company would act under the circumstances in the design, research, manufacture, sale, and distribution of Defendant's products, including the duty to take all reasonable steps necessary to prevent the manufacture and/or sale of a product that was so unreasonably capable of being engine activated and operated without a key in the starting system as was the Kia Soul that killed Plaintiff's son.

46. Defendant owed a duty to Plaintiff and her son to not expose them to an unreasonable risk of harm.

47. Defendant's duties were preexisting.

48. At all times relevant to this litigation, Defendant knew, or in the exercise of reasonable care, should have known of the hazards and dangers of foregoing installation of an engine immobilizer, as well as other industry-standard anti-theft measures, in its vehicles, and specifically, the increased risk of vehicle theft and public harm by failing to include such industry-standard anti-theft measures.

49. Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that the omission of an engine immobilizer, as well as other industry-standard anti-theft measures in its vehicles could cause injuries and thus created a dangerous and unreasonable risk of injury to Plaintiff's son.

50. Defendant, by action and inaction, breached its duty and failed to exercise reasonable care, and failed to act as a reasonably prudent person and/or company would act under the same circumstances in the design, research, development, manufacture, testing, sale, and distribution of its vehicles, in that Defendant manufactured and produced vehicles that fell below minimum industry-standard security measures.

51. At all times relevant to this litigation, Defendant Kia was in control of the design, research, manufacture, testing and distribution of its vehicles that were distributed to authorized dealerships.

52. At all times relevant to this litigation, Defendant knew or should have known that it was foreseeable that members of the public, including those not even then operating motor vehicles, would suffer injuries as a result of Defendant's failure to exercise reasonable care in the manufacturing and sale of its vehicles, particularly given Defendant's recognition as early as 2007 that engine immobilizers were an effective deterrent in preventing vehicle theft.

53. Defendant was negligent in failing to monitor and guard against third-party misconduct and enabled such misconduct. In this case, a car thief was able to take advantage of the defective design and manufacture of the Kia Soul manufactured, sold, and distributed by Defendant to steal the vehicle and then recklessly operate the same while fleeing from police. The resulting collision that caused Yonis to suffer serious injuries and death was the very type of incident that Defendant knew or, in the exercise of reasonable care, should have known would result from its decision to not manufacture its vehicles with industry-standard safety measures.

54. Defendant acted unreasonably in light of what conduct could be foreseen as a result of its conduct.

55. Defendant's negligence helped to produce, did produce, and was the direct and proximate cause of severe, catastrophic injuries to Yonis Said, which resulted in his suffering and death.

56. Defendant's acts and omissions imposed an unreasonable risk of harm to Yonis Said separately and/or combined with the negligent and/or criminal acts of third parties.

57. Yonis Said's injuries, damages, and economic losses, both present and future, would not have occurred absent Defendant's negligent conduct described herein.

58. As a direct and proximate result of Defendant Kia's design and manufacture of its vehicles without industry-standard safety measures, such as an engine immobilizer, Yonis Said suffered severe, catastrophic injuries which resulted in suffering and death.

**FOURTH CAUSE OF ACTION**
**PRODUCT LIABILITY**

59. Plaintiff incorporates each of the preceding paragraphs as if fully rewritten herein.

60. Defendant's vehicles, including the Kia Soul that injured Yonis Said, were defective in their design and manufacture because the vehicles were produced without standard-industry safety measures.

61. At all times relevant, Defendant Kia knew or, in the exercise of reasonable care should have known, that its decision to manufacture vehicles without industry-standard safety features, including an engine immobilizer, posed an unreasonable risk of harm to Plaintiff, her son, and other members of the public.

62. It was reasonably foreseeable to Defendant Kia that its vehicle would be stolen and operated recklessly by unauthorized drivers.

63. Defendant's decision to design, manufacture and distribute vehicles without standard-industry safety measures made those vehicles far more likely to be stolen and present an unreasonable risk of harm to Plaintiff, her son, and other members of the general public.

64. Indeed, a multitude of videos were posted on TikTok, YouTube, and other social media platforms, that touted the ease by which Defendant's vehicles could be stolen.

65. Defendant's design and manufacture of vehicles without industry-standard safety measures failed to conform to applicable public standards, including standards promulgated by the NHTSA and FMVSS 114.

66. There was no safety advantage to Defendant's design and manufacture of vehicles without industry-standard safety measures.

67. When the defective vehicles left Defendant's control it was both technically and economically feasible for Defendant to incorporate industry-standard safety measures, such as an engine immobilizer. In fact, Defendant was manufacturing similar vehicles for other markets that were designed and manufactured with an engine immobilizer.

68. Defendant Kia knew or, in the exercise of reasonable care should have known, that its vehicles would have been less dangerous had they been designed and manufactured with industry-standard safety measures, such as an engine immobilizer.

69. As a direct and proximate result of Defendant Kia's design and manufacture of its vehicles without industry-standard safety measures, such as an engine immobilizer, Yonis Said suffered severe, catastrophic injuries which resulted in suffering and death.

## FIFTH CAUSE OF ACTION
## WRONGFUL DEATH

70. Plaintiff incorporates each of the preceding paragraphs as if fully rewritten herein.

71. As the direct and proximate result of one or more of the aforementioned bad acts and/or omissions of Defendant, as well as their employees and/or agents, Yonis Kabiro Said sustained serious physical injuries and, as a result, died on July 22, 2023.

72. On July 22, 2023, Yonis Kabiro left surviving his parents: Luley Ramadan Musa and Kabiro Said Hassan, both of whom suffered pecuniary loss and the loss of Yonis' society, companionship, and affection as a direct and proximate result of his death.

73. This action is brought by Plaintiff Luley Ramadan Musa, Administrator for the Estate of Yonis Kabiro Said, by virtue of an Order of the Probate Court of Franklin County, Ohio and pursuant to the provisions of the Ohio Wrongful Death statute. R.C. 2125.01, *et seq.*

## SIXTH CAUSE OF ACTION
## SURVIVAL

74. Plaintiff incorporates each of the preceding paragraphs as if fully rewritten herein.

75. As the direct and proximate result of the aforementioned bad acts and/or omissions of Defendants, Yonis Said suffered conscious pain and suffering and thus this action has survived his death.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Kia America, Inc., as follows:

13

A. For compensatory damages in an amount in excess of $5,000,000.00;

B. For punitive damages in an amount in excess of $10,000,000.00;

C. For and award of prejudgment and post-judgment interest;

D. For Plaintiff's reasonable attorney fees, costs, and litigation expenses; and

E. For such other and further relief as this Court deems to be just and equitable.

Respectfully submitted,

/s/ Samuel H. Shamansky
**SAMUEL H. SHAMANSKY CO., L.P.A.**

Samuel H. Shamansky (0030772)
Donald L. Regensburger (0086958)
523 South Third Street
Columbus, Ohio 43215
(614) 242-3939 – Phone
(614) 242-3999 – Fax
shamanskyco@gmail.com

Counsel for Plaintiff

## **DEMAND FOR JURY TRIAL**

Trial by jury is demanded on all issues so triable.

Respectfully submitted,

/s/ Samuel H. Shamansky
**SAMUEL H. SHAMANSKY CO., L.P.A.**

Samuel H. Shamansky (0030772)
Donald L. Regensburger (0086958)
523 South Third Street
Columbus, Ohio 43215
(614) 242-3939 – Phone
(614) 242-3999 – Fax
shamanskyco@gmail.com

Counsel for Plaintiff