**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LULEY RAMADAN MUSA,** ***administrator for the estate of*** **YONIS KABIRO SAID,** | : | |
| **Plaintiff,** | : | **Case No. 2:25-cv-807** |
| **v.** | : | **Judge Algenon L. Marbley** |
| **KIA AMERICA, INC.,** | : | **Magistrate Judge S. Courter M. Shimeall** |
| **Defendant.** | : | |

## OPINION AND ORDER

This matter comes before the Court on Defendant Kia America, Inc.'s Motion to Dismiss. (ECF No. 5). For the following reasons, Kia's Motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND[1]

On July 22, 2023, Tyrell Shute was driving a stolen Kia Soul in Columbus, Ohio. When law enforcement attempted to stop him, Shute attempted to flee from police and initiated a high-speed chase. (¶ 21).[2] During the chase, Shute jumped a curb and began driving the Kia Soul through a grassy yard, where Plaintiff Luley Ramadan Musa and her four-year-old son Yonis Kabiro Said happened to be. Shute struck Yonis Said with the stolen Kia. He continued driving, before ultimately exiting the vehicle and fleeing from law enforcement on foot. (¶ 22). Yonis Said suffered catastrophic injuries from the vehicle collision and ultimately died. (¶ 8). A year

---

[1] When reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

[2] All references to the "complaint" or parenthetical paragraph citations "(¶ _)" cite to the Complaint (ECF No. 1), unless otherwise stated.

later, Shute pleaded guilty to involuntary manslaughter, failure to comply, and receiving stolen property. Shute was sentenced to serve between 14 and 19.5 years in prison.[3]

On July 21, 2025, Plaintiff Musa, serving as the administrator of Yonis Said's estate, brought this action against Defendant Kia America, Inc. Plaintiff seeks to hold Kia civilly liable for its role in the design, manufacture, distribution, and sale of defective and dangerous vehicles like the Kia Soul that killed Yonis Said. (¶¶ 1, 7, 9, 23). Specifically, Plaintiff alleges that her son "was the victim of a public nuisance created by Kia through its manufacture and sale of defective vehicles . . . that were easy to steal." (¶ 9).

Plaintiff's theory is that Kia "disregarded industry safety standards," producing vehicles that failed to meet the National Highway Transportation Safety Administration's safety standards, including Federal Motor Vehicle Safety Standard 114.[4] (¶ 9). Since 1968, the Department of Transportation and the Department of Justice have warned that "amateur thieves stealing cars to go joy-riding make up a significant portion of all auto thefts in America." (¶ 15). Thieves could easily steal cars using pliers to remove the ignition lock, so engine immobilizers became effective ways to prevent vehicle theft. (¶ 15). Most automobiles are now equipped with ignition keys that emit a radio signal prompting a computer to disengage an immobilizer, which allows the vehicle to move while the key is present. According to Plaintiff, "Kia models are a glaring exception." (¶ 12). She asserts that Kia "failed" to incorporate immobilizer technology to ensure Kia car ignitions could not be started without keys. (¶ 13).

Kia's "failure to install industry-standard anti-theft devices," (¶ 16), meant that Kia's vehicles—including the stolen Kia Soul—were produced with a series of design flaws that allowed

[3] Judgment Entry at 2, *State v. Shute*, Case No. 23-cr-3698 (Franklin Cnty. C.P. Aug. 5, 2024).
[4] *See* 49 C.F.R. § 571.114, section 5.1 (*Theft Protection*).

thieves to steal Kia vehicles quickly: (i) steering columns did not contain adequate secure collars or casings, allowing easy access to the ignition assembly; (ii) ignition lock cylinders lacked a locking mechanism and could be removed easily with minimal force, leaving the vehicle's ignition switch intact; (iii) exposed ignition switches could be started with pliers or a USB connector; and (iv) car ignition and key systems lacked engine immobilizers. (¶ 10). According to Plaintiff Musa, these alleged design flaws "opened the floodgates to vehicle theft, crime sprees, reckless driving, and public harm." (¶ 16).

Plaintiff explains that beginning in 2021, social media platforms such as TikTok and YouTube began to see a viral phenomenon known as the "Kia Challenge," where users posted videos demonstrating just how easily certain Kia (and Hyundai) vehicles could be stolen, leading to a sharp rise in vehicle thefts in Columbus and across the nation. (¶¶ 17–18, 20). Often, these vehicles were stolen by minors who wanted to joyride. (¶ 20); *accord Moshi v. Kia Am., Inc.*, 155 F.4th 652, 655 (6th Cir. 2025). The rise in car thefts created a concomitant increase in risk to public safety. (¶ 19). Thus, Plaintiff claims that Shute's actions, and the tragic death of her son Yonis, were made possible because Kia's vehicles were not safe.

**A. Causes of Action**

Plaintiff brings six causes of action against Defendant Kia:

***Absolute Public Nuisance (Count I):*** Plaintiff's first cause of action arises under the common law. She alleges that Kia knowingly created and maintained a public nuisance by manufacturing and distributing automobiles that were "dangerously susceptible" to theft, and thus intentionally violated Federal Motor Vehicle Safety Standard 114, "which specifically requires automobiles be equipped with a starting system which, upon removal of the key, prevents 'steering, or forward self-mobility, of the vehicle, or both' as well as a 'transmission or gear selection control

[which] cannot move from the park position, unless the key is in the starting system.'" (¶¶ 24–34).

***Qualified Public Nuisance (Count II):*** The second cause of action also arises under the common law. Plaintiff alleges that Kia's conduct "created and maintained a public nuisance" when it "negligently engaged in conduct or omissions which endangered or injured the health, safety, or comfort of [Yonis Said] and other area residents," despite being obligated to exercise care in ensuring its vehicles were safe to industry standards. (¶¶ 35–43).

***Negligence (Count III):*** Plaintiff alleges that Kia breached a common-law duty and failed to exercise reasonable care in manufacturing and producing vehicles falling below the minimum industry standards for safety. (¶¶ 44–58).

***Product Liability (Count IV):*** Plaintiff alleges that Kia failed to design and manufacture its vehicles to industry-standard safety measures, including by omitting an engine immobilizer, despite it being "reasonably foreseeable" to Kia that its vehicles "would be stolen and operated recklessly by unauthorized drivers." (¶¶ 59–69). This claim arises under the Ohio Product Liability Act, Ohio Rev. Code § 2307.71 *et seq.* ("OPLA").

***Wrongful Death (Count V):*** The fifth cause of action arises under Ohio's wrongful death statute. *See* Ohio Rev. Code § 2125.01 *et seq*. Plaintiff alleges that Yonis Said's surviving parents have suffered pecuniary loss, loss of society, companionship, and affection as a result of his death. (¶¶ 70–73).

***Survival (Count VI):*** Finally, Plaintiff's sixth cause of action is for survival. (¶¶ 74–75).

### B. Procedural History

On December 8, 2025, Kia moved to dismiss all six counts for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 5). Plaintiff responded

in opposition, though she conceded that dismissal of Count Three for negligence was appropriate, and agreed with Kia that Counts Five and Six for wrongful death and survival would rise or fall with the preceding Counts. (ECF No. 12 at 2, 15). Kia has replied. (ECF No. 14). This motion is ripe for review.

## II. STANDARD OF REVIEW

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) evaluates the sufficiency of the complaint, and permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion tests the complaint's cause of action, and is "not a challenge to [its] factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Thus, in evaluating a Rule 12(b)(6) motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accept [all] allegations as true, and draw all reasonable inferences in [its] favor." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks and citation omitted). This favorable treatment of the complaint applies to well-pleaded factual allegations. Complaints cannot rest on legal conclusions, as "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient; similarly, factual assertions cannot rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In sum, the facts alleged must be sufficient to "raise a right to relief above the speculative level," such that the complaint states a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 555, 570; *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

Beyond the complaint itself, courts may also consider exhibits attached to the complaint, "public records, items appearing in the record of the case and exhibits attached to the defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430.

## III. LAW AND ANALYSIS

Plaintiff Musa raises six claims against Kia for absolute public nuisance, qualified public nuisance, negligence, product liability, wrongful death, and survival. Defendant Kia first moves to dismiss all of Plaintiff's claims on the basis that they are foreclosed under Ohio law by proximate causation. Kia argues that Shute intervened as a conscious and responsible agent severing the causal chain and the alleged anti-theft defect is too remote to support a finding of liability.

### A. Proximate Causation

Under Ohio tort law, "'the proximate cause of an event is that which [in] a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred.'" *NOCO Co. v. OJ Comm., LLC*, 35 F.4th 475, 482 (6th Cir. 2022) (quoting *Aiken v. Indus. Comm'n*, 53 N.E.2d 1018, 1020 (Ohio 1944)). Proximate causation is "a bit of a misnomer" and could be better thought as the "scope of liability," as the concept concerns "the limitations . . . upon the actor's responsibility for the consequences of the actor's conduct." *Id.* (citations omitted). Thus, proximate causation requires a plaintiff "show that the defendant should be held liable for causing the injury," and the relevant inquiry is whether "the defendant's action and the plaintiff's injury are connected to such a significant degree as to justify imposing liability." *Id.* (citations and internal quotation marks omitted).

Acts that occur after the initial action but before the injury can be referred to as intervening acts. Where intervening acts "'unite with the original act to cause injury,'" then "the original wrongdoer is still liable." *Id.* at 483 (quoting *Doyle v. Fairfield Machine Co.*, 697 N.E.2d 667, 690 (Ohio Ct. App. 11th Dist. 1997)). Should "an intervening cause . . . break the causal chain," however, that "superseding cause" will make it so "the original party is no longer liable." *Id.* (citations omitted). Whether an intervening cause is superseding or unites with the original act depends on foreseeability under Ohio law. "If the intervening cause was 'reasonably foreseeable' by the original actor, then the original actor will be liable." *Id.* (quoting *Cascone v. Herb Kay Co.*, 451 N.E.2d 815, 819 (Ohio 1983)).

While foreseeability is one of the metrics used to evaluate proximate causation, it is not the only metric. "Proximate cause requires 'some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered.'" *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 480 (6th Cir. 2017) (quoting *Queen City Terminals v. Gen. Am. Trans.*, 653 N.E.2d 661, 670 (Ohio 1995)). Thus, "[i]n addition to foreseeability, [proximate cause] requires 'some direct relation' between the injury and the injurious conduct." *Id.* (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). The Court considers foreseeability and directness in turn.

### *1. Foreseeability*

Kia concedes that Plaintiff has sufficiently alleged the foreseeability component of proximate causation, (*see* ECF No. 5 at 1), as it must in light of the Sixth Circuit's decision in *Moshi*, which also considered Kia's liability to victims injured by stolen Kia vehicles. *Moshi* is instructive, and it is worth reviewing the Sixth Circuit's foreseeability analysis in it. *Moshi*

surveyed Ohio law and distinguished the "key-in-the-car" line of cases from cases assessing product liability. *Moshi v. Kia Am., Inc.*, 155 F.4th 652, 656–62 (6th Cir. 2025).

Under Ohio's key-in-the-car line of cases, individual car owners who expose their vehicles to theft are not, as matter of law, liable for injuries resulting from a thief's operation of that vehicle. Comparing the number of reported car thefts against the number of registered vehicles in the United States, the Ohio Supreme Court concluded that a car owner would not "reasonably anticipate that his car would be stolen even if he left his key in his motor vehicle." *Ross v. Nutt*, 203 N.E.2d 118, 120 (Ohio 1964). And even if the car owner "could anticipate that his car would be stolen, he could not reasonably anticipate that such vehicle would be operated in such a manner as to cause an accident." *Id.* Thus, the Ohio Supreme Court rejected the invitation to, "by judicial fiat, mak[e] every owner of an automobile an insurer for injuries to third parties which may be occasioned by the negligent or reckless acts of a car thief." *Pendrey v. Barnes*, 479 N.E.2d 283, 284 (Ohio 1985) (per curiam).

By contrast, Ohio law expects the manufacturer of a product "to be an expert in its product" by "testing and monitoring known and possible hazards relating to its products." *Boyd v. Lincoln Elec. Co.*, 902 N.E.2d 1023, 1028 (Ohio Ct. App. 8th Dist. 2008); *accord* Ohio Rev. Code § 2307.71(A)(6)(b) (defining foreseeable risks as risks that a manufacturer should recognize); *cf. Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1146–47 (Ohio 2002) (finding allegations that a defendant "manufactured or supplied defective guns without appropriate safety features" sufficient to state a claim under Ohio Product Liability Act, and noting that under Ohio's common law at that time, "a product may be defective if the manufacturer fails to incorporate feasible safety features to prevent foreseeable injuries").

In *Moshi*, the Sixth Circuit synthesized these two lines of cases in instances where automobile manufacturers were alleged to be liable for design defects that lead to car thefts and injuries. Writing for the panel majority, Judge Bloomekatz reasoned that juries could conclude "regulated and sophisticated" automobile manufacturers and distributors like Kia "knew or reasonably should have known about the connection between car theft and accidents." *Moshi*, 155 F.4th at 656–60. Thus, Ohio's key-in-the-car cases were distinguishable from design defect claims. It was sufficient for the plaintiff to allege that a sophisticated manufacturer had been put "on notice of the likelihood of theft-related accidents," and the issue was "not that the claim arises from third-party conduct, but that the manufacturer should have foreseen the misconduct given its knowledge of its product's risks." *Id.* at 660–61. It was possible for a manufacturer plausibly to foresee the risks, and so a product liability suit could not fail for lack of proximate causation due to a lack of foreseeability. *Id.* at 662.

*Moshi* also noted that proximate causation requires "directness" as well as foreseeability, but did not address directness. *Id.* at 662 n.4.

### *2. Directness and Attenuation*

The "directness requirement 'requires some direct relation between the injury asserted and the injurious conduct alleged.'" *City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 615 F.3d 496, 502 (6th Cir. 2010) (quoting *Holmes*, 503 U.S. at 268). "Although not the sole element, the requirement of a direct injury is a 'central element' of proximate cause." *Id.* (quoting *Perry v. Am. Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003)). Direct injury "is distinct from foreseeability and applies even if the Defendants intentionally caused the alleged course of events." *Id.*

A cause that is not direct is by its nature too remote. A tort cause of action "will fail on remoteness grounds if the harm alleged is the remote consequence of the defendant's misconduct

(causation) or is wholly derivative of the harm suffered by a third party (standing)." *Cincinnati*, 768 N.E.2d at 1147–48. To analyze remoteness, Ohio courts consider several factors set forth by the United States Supreme Court that show why "directness of a relationship is a requirement of causation: (1) indirectness adds to the difficulty in determining which of the plaintiff's damages can be attributed to the defendant's misconduct, (2) recognizing the claims of the indirectly injured would complicate the apportionment of damages among plaintiffs to avoid multiple recoveries, and (3) these complications are unwarranted given the availability of other parties who are directly injured and who can remedy the harm without these associated problems." *Id.* at 1148 (citing *Holmes*, 503 U.S. at 269–70). In short, remoteness under Ohio law necessitates an inquiry into the difficulty of proof, risk of double recovery, and directness to the injured victim.

Kia argues connection between its actions and Yonis Said's tragic death is "fatally attenuated" for two reasons: first, because Shute "intervened as a conscious and responsible agency, severing any causal chain and relieving Kia of liability," (ECF No. 5 at 1) (citation and internal quotation marks omitted), and second, because any alleged defect was "several steps removed" from Yonis Said's death. (*Id.* at 1–2). The Court considers each argument in turn, beginning with Shute's actions. Remoteness is discussed in Section III(A)(2)(b), *infra*.

*a. Shute's actions did not sever the causal chain.*

Kia first argues that Shute's conscious and independent decision to drive recklessly severed the causal chain as a matter of law, characterizing this rule as one of directness. (ECF No. 5 at 3–5). In advancing this argument, Kia chiefly relies on Ohio caselaw providing that an intervening cause can break the chain of causation where it is a "conscious and responsible agency" that "could or should have eliminated the hazard." *Thrash v. U-Drive-It Co.*, 110 N.E.2d 419, 422 (Ohio 1953); *accord Mussivand v. David*, 544 N.E.2d 265, 272 (Ohio 1989). Plaintiff counters that

Shute's actions were foreseeable to Kia and thus cannot sever the causal link. (ECF No. 12 at 10–13).

Kia's argument here fails. As an overarching matter, Kia's authorities are orthogonal to the issues of this case. In *Thrash*, the Ohio Supreme Court determined that a defendant selling a used vehicle with defective parts to an automobile dealer could not be held liable for those defects because the dealer was an intervening agent that created the hazard and resulting injury when the purchaser was not warned of the defect. *Thrash*, 110 N.E.2d at 422–23. *Thrash*'s holding was premised on a used automobile dealer "generally [being] under a duty to exercise reasonable care in making an examination thereof to discover defects therein which would make them dangerous to users or to those who might come into contact with them." *Id.* at 423. Moreover, *Thrash* noted that the defendant who sold the used vehicle to the used automobile dealer could invoke the rule breaking the causal chain under "*the circumstances of this action*." *Id.* at 422 (emphasis in original). In short, *Thrash* is inapposite.

The other authorities offered by Kia are not analogous to this case, either. Several are similar to *Thrash* in that they also deal with the lawful sale from defendants to third-parties of tanks containing explosive vapors, *see Bennison v. Stillpass Transit Co.*, 214 N.E.2d 213, 216 (Ohio 1966), or propane, *see Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648, 651–52 (6th Cir. 1966), that subsequently exploded and caused injury. Again, those third parties took lawful possession of those hazards but failed to remedy their danger or prevent the explosion. In both cases, the *lawful* intervening custody of third parties broke any casual chain that could be used to bring a tort claim against the defendants.

Finally, *Mussivand* dealt with facts entirely foreign to those at issue here. There, a husband sued his wife's paramour for transmitting a venereal disease to her, that she subsequently

transmitted to her husband. *Mussivand*, 544 N.E.2d at 273. The Ohio Supreme Court determined that the paramour's liability would be "extinguished" if the wife knew or should have known she was infected, as she would become the agent responsible for eliminating the hazard to her husband. *Id.* It is worth noting that adultery is not a crime under Ohio law.[5]

Plaintiff alleges that her son was killed because Kia "manufactured and sold vehicles that were easy to steal, including [the] Kia Soul that was driven by [Shute] and fatally injured Yonis [Said]." (¶ 9). Just as Shute's reckless driving is alleged to have been the cause of Yonis Said's death, Shute allegedly was able to steal the Kia Soul and drive it because of Kia's designing the vehicle to be susceptible to theft and thus dangerous. (*See, e.g.*, ¶¶ 9, 15, 28–29, 61–65). Kia's position essentially is that Shute, *as the car thief*, was the "conscious and responsible agency [who] could and should have eliminated the hazard" of his theft and post-theft driving, and thus Kia—whose manufacture of that car was allegedly defective in a way to render the car more susceptible to being stolen—should be relieved of liability. (ECF No. 5 at 3–4). That is twisted logic.

As Judge Nalbandian explained writing for a unanimous panel in *NOCO Co.*, there is always some type of intervening cause between initial action and ultimate injury, so the question is not simply whether a separate agent acted within the causal chain. Rather, causes that intervene after the initial act must be analyzed to see whether they "unite" with the original act. *NOCO Co.*, 35 F.4th at 482–83. Where they unite, the original wrongdoer remains liable. *Id.* at 483. Determining whether intervening causes and the original act unite necessitates a foreseeability analysis, because if the original actor could have reasonably foreseen the intervening cause, then the original actor remains on the hook for those intervening causes and the resultant ultimate injury.

---

[5] At one time, adultery was a criminal offense under Ohio law. It was decriminalized in the 1970s. *See Jasterbowski v. Michos*, 337 N.E.2d 627, 632 (Ohio Ct. App. 8th Dist. 1975).

*Id.* As then-Chief Judge Benjamin Cardozo explained a century ago, "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 100 (N.Y. 1928) (Cardozo, C.J.). That holds true under Ohio law, which recognizes that an actor has a duty to a particular plaintiff when "the risk to that plaintiff is within the actor's 'range of apprehension.'" *Grover v. Eli Lilly & Co.*, 591 N.E.2d 696, 700 (Ohio 1992) (quoting *Palsgraf*, 162 N.E. at 100). Plaintiff has sufficiently alleged that the risk of automobile theft were within the range of Kia's apprehension.

Although dressed as an argument about directness, Kia's position here ultimately distills down to the foreseeability inquiry. It is foreclosed by *Moshi*, which explained that "[i]f a third-party's intervening act—'whether innocent, negligent, intentionally tortious, or criminal'—is 'one of the hazards which makes the [defendant] negligent,' then the act does not sever proximate causation." *Moshi*, 155 F.4th at 658 (quoting *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 543 N.E.2d 769, 775 (Ohio 1989)). Because the Ohio Product Liability Act "defines the relevant risks as those that a sophisticated manufacturer should recognize[,] . . . theft-related accidents may well count among the hazards that make a car's design defective. . . . [I]f so, then theft-related accidents would not sever proximate causation and absolve a carmaker of liability under OPLA." *Id.* at 658–59 (citations omitted).

Here, "[a]ssuming that the thefts are themselves foreseeable, the question turns to whether the harm that follows is foreseeable enough to maintain the causal chain." *In re Kia Hyundai Vehicle Theft Litig.*, 2024 WL 4184059, at *7 (C.D. Cal. Sept. 6, 2024). A jury could conclude that a sophisticated automobile manufacturer like Kia knew or should have known about the connection between car theft and accidents, satisfying foreseeability. *See Moshi*, 155 F.4th at 656–

62. Based on Plaintiff's allegations, Shute's theft of the Kia Soul cannot break the causal chain for Kia's alleged tortious conduct in designing and manufacturing vehicles susceptible to theft and dangerous to the public. Indeed, it seems self-evident that the risk of automobile theft and concomitant dangers of reckless driving are within the range of apprehension of a sophisticated automobile manufacturer like Kia. *See In re Kia*, 2024 WL 4184059, at *6–11. Shute's alleged actions did not, as a matter of law, sever the causal chain in this case.

*b. The alleged defect in the Kia Soul was not too far removed from Yonis Said's death.*

Next, Kia argues that Yonis Said's death was "too attenuated from Kia's alleged misconduct," and thus Plaintiff's claims fail for a lack of directness under Ohio law. (ECF No. 5 at 6). In advancing this position, Kia relies on the United States Supreme Court's decision in *Holmes v. Sec. Inv. Prot. Corp.*

In *Holmes*, Robert Holmes allegedly "conspired in a stock-manipulation scheme that disabled two broker-dealers from meeting obligations to customers, thus triggering [the Securities Investor Protection Corporation's] statutory duty to advance funds to reimburse customers." *Holmes*, 503 U.S. at 261. The Securities Investor Protection Corporation, or "SIPC," sought to recover those funds from Holmes under the Racketeer Influenced and Corrupt Organizations Act, commonly known as "RICO," and the Supreme Court determined that it could not. *Id.* Relevant here, SIPC argued that it was entitled to recover "because it [was] subrogated to the rights of those customers of the broker-dealers who did not purchase manipulated securities," but that argument failed because the individual and his alleged conspirators "did not proximately cause the nonpurchasing customers' injury." *Id.* at 270. As the Supreme Court explained, even assuming *arguendo* that SIPC could "stand in the shoes of nonpurchasing customers, the link is too remote

between the stock manipulation alleged and the customers' harm" because that harm was "purely contingent on the harm suffered by the broker-dealers":

> That is, the conspirators have allegedly injured these customers only insofar as the stock manipulation first injured the broker-dealers and left them without the wherewithal to pay customers' claims. Although the customers' claims are senior (in recourse to 'customer property') to those of the broker-dealers' general creditors, the causes of their respective injuries are the same: The broker-dealers simply cannot pay their bills, and only that intervening insolvency connects the conspirators' acts to the losses suffered by the nonpurchasing customers and general creditors.

*Id.* at 271 (citations omitted). Relying on the proposition that "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step," *id.* at 271 (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 533 (1983)), the Supreme Court held that proximate causation's "direct-injury limitation" was incorporated into RICO's civil action provision, 18 U.S.C. § 1964(c). *Holmes*, 503 U.S. at 265–72. It explained why by setting fourth three policy considerations:

> If the nonpurchasing customers were allowed to sue, the district court would first need to determine the extent to which their inability to collect from the broker-dealers was the result of the alleged conspiracy to manipulate, as opposed to, say, the broker-dealers' poor business practices or their failures to anticipate developments in the financial markets. Assuming that an appropriate assessment of factual causation could be made out, the district court would then have to find some way to apportion the possible respective recoveries by the broker-dealers and the customers, who would otherwise each be entitled to recover the full treble damages [provided by the RICO statute]. Finally, the law would be shouldering these difficulties despite the fact that those directly injured, the broker-dealers, could be counted on to bring suit for the law's vindication. As noted above, the broker-dealers have in fact sued in this case, in the persons of their SIPA trustees appointed on account of their insolvency. Indeed, the insolvency of the victim directly injured adds a further concern to those already expressed, since a suit by an indirectly injured victim could be an attempt to circumvent the relative priority its claim would have in the directly injured victim's liquidation proceedings.

*Id.* at 272–74 (citations omitted). The *Holmes* court did not exclude RICO as a cause of action, but instead noted that "the nonpurchasing customers, or SIPC in their stead, are not proper plaintiffs" because they were only injured "indirectly," and allowing them to sue "would open the

door to 'massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits.'" *Id.* at 274 (quoting *Assoc. Gen. Contractors*, 459 U.S. at 545) (cleaned up). As a result, SIPC would have to "wait on the outcome of the trustees' suit." *Id.*

To summarize the import of *Holmes*, injury claims advanced by a statutory agent on behalf of certain customers of broker-dealers were too attenuated, even though the broker-dealers were victims of a stock-manipulation scheme. The customers at issue had not purchased the manipulated stock, and were harmed only because their broker-dealers had first been harmed and could no longer pay claims owed to them.

Kia first argues that Plaintiff's alleged causal chain is too attenuated and indirect to support legal liability by requiring "at least four steps":

> (1) Kia omitted anti-theft devices, such as engine immobilizers; (2) third parties created and propagated a viral social media phenomenon criminally soliciting the public to steal Kia vehicles for the purpose of recklessly joyriding; (3) a car thief decided to steal the Kia Soul; and (4) that after police attempted to intervene, the thief elected to evade them by driving recklessly, resulting in an accident causing injury.

(ECF No. 5 at 6–9).

Plaintiff counters that Kia has engaged in "questionable" characterization of the alleged causal steps, but also argues that any such analysis is unnecessary given the Ohio Product Liability Act provides statutory requirements. (ECF No. 12 at 13–14). In reply, Kia points out that the statute incorporates the requirements of proximate causation. (ECF No. 14 at 2).

Kia is correct that Ohio law incorporates proximate causation into its product liability statutory cause of action. *See* Ohio Rev. Code 2307.73(A)(2) (requiring that "[a] defective aspect" be "a proximate cause of harm for which the claimant seeks to recover compensatory damages"). But Kia has not shown that Plaintiff's theory of liability is too remote to connect Kia's actions and

Yonis Said's death. At this preliminary stage in the proceeding, the Court will not presume that Plaintiff's factual allegations are too attenuated in a causal chain as to preclude proximate causation. Kia's arguments would require the Court "to do as much speculating," if not more speculating, "as [Plaintiff's] multi-link chain of causation allegedly requires." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 619 (6th Cir. 2004).

Kia's characterization of the supposedly multi-step causal chain provides a partisan gloss on Plaintiff's allegations. Nowhere does Plaintiff allege that Shute stole the Kia Soul in question *because of* the so-called Kia Challenge. The Kia Challenge allegations appear to show that it was well-known to Kia and car thieves that Kia automobiles were vulnerable to theft. (*See* ¶¶ 13, 17, 20). Moreover, Kia fails to explain why the theft of the Kia Soul should be considered as a distinct and separate step in the causal chain from the reckless driving that resulted in Yonis Said's death. As one court observed, it would be "truly unforeseeable conduct" for a car thief to steal a car and then engage in a "casual, traffic-law-abiding" behavior; instead, the norm is for "a car thief to navigate the road *as though they were driving a stolen car*. That is, recklessly." *In re Kia*, 2024 WL 4184059, at *11. Separately, Kia does not explain why the Court should treat the *Holmes* first-step *damages* principle as limiting the factual steps in the causal chain leading to the alleged injury. At any rate, where "many fact-driven questions" necessitate speculative answers, courts are reticent to "resolv[e] the dispute as a matter of law at this early stage in the case." *Trollinger*, 370 F.3d at 619.

Kia also contends that the policy factors set forth in *Holmes* show that Plaintiff's causation theory is too indirect. The Ohio Supreme Court has modeled its analysis on the *Holmes* Court's three policy factors, so to determine "whether causation is too remote" as a matter of Ohio law,

courts must weigh: (1) difficulty of proof, (2) double recovery, and (3) other possible plaintiffs who could bring the action against the defendant. *Cincinnati*, 768 N.E.2d at 1149.

According to Kia, Plaintiff's causation theory would necessitate arbitrary and complex damages litigation, could lead to a multiplicity of indirect lawsuits (for example, lawsuits for police overtime due to the alleged rash of Kia thefts, or a lawsuit for subrogation by Yonis Said's insurer for medical bills), and is unnecessary where "the vehicle owner is the most direct victim of the alleged design defect" and could sue. (ECF No. 5 at 9–11). Plaintiff does not engage with these factors, as Kia points out. (ECF No. 14 at 3–4).

Again, such a fact-intensive analysis may be unnecessary at this early stage. *Trollinger*, 370 F.3d at 619. But at any rate, Kia's arguments are unavailing. First, the difficulty of proof concern is low in this case. True, Kia's design of the vehicle is not the only action that resulted in harm to Yonis Said. But the fact-finder would be tasked with evaluating Kia's liability, if any, for manufacturing and producing allegedly defective vehicles that were susceptible to theft. Plaintiff seeks compensatory and punitive damages for Said's death, and this type of recovery is not impossible to calculate; rather, it can be "easily computed." *Cincinnati*, 768 N.E.2d at 1149. Second, there is no risk of double recovery in this case. Plaintiff is the administrator of Yonis Said's estate, so she is the proper party to recover for Yonis Said's death. Concerns that the City of Columbus could sue Kia for police overtime, or Said's health insurer could sue Kia for medical payments, confuse the aim of the test and are irrelevant when considering the risk of double recovery for *Plaintiff's* injuries.[6] At any rate, they do not show that there would be a risk of double recovery, only possible recovery to other potential claimants for other injuries. *See id.* (little risk

[6] Kia also argues that "the Decedent's employer [could sue] for lost profits." (ECF No. 5 at 10). This is a surprising argument, given that Yonis Said was four years old when he was hit and killed by Shute. (¶¶ 1, 22).

of double recovery where litigant was seeking recovery only for own injuries). Third and relatedly, there do not appear to be other plaintiffs who could bring suit on Yonis Said's behalf for his death. Contrary to Kia's suggestion, this case is not about the car owner's harm in having the Kia Soul stolen. Even if the car owner did sue Kia, it would be for the car owner's own injuries, which are distinct from and likely less than the injuries allegedly suffered by Plaintiff. *Compare Holmes*, 503 U.S. at 272–74 (broker-dealers who were directly injured by stock manipulation scheme could and did sue for their injuries, weighing against further removed suit by non-purchasing customers who were only indirectly injured by the resulting injuries to their broker-dealers).

Plaintiff's claims against Kia are not so remote as to preclude recovery. Kia's motion is **DENIED** insofar as it argues that all counts are deficient for lack of requisite proximate causation. The Court turns to Kia's claim-specific arguments.

### B. Negligence (Count III)

Plaintiff brings three common-law claims, including a claim for negligence. In her negligence claim, she alleges that Kia breached its duty and failed to exercise reasonable care in manufacturing and producing vehicles falling below the minimum industry standards for safety. (¶¶ 44–58).

The Ohio Product Liability Act provides that "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability claims or causes of action." Ohio Rev. Code § 2307.71(B). Indeed, "[c]ourts have consistently held that a common law claim for negligent design, manufacture, inspection, and failure to warn are abrogated" by this statutory provision. *Simpson v. Johnson & Johnson*, 2020 WL 5629092, at *4 (N.D. Ohio Sept. 21, 2020) (collecting cases). Relying on Section 2307.71(B), Kia argues that Plaintiff's common-law negligence claim is unambiguously abrogated. (ECF No. 5 at 11–12). Plaintiff concedes that her

negligence claim under Count Three should be dismissed. (ECF No. 12 at 2). Accordingly, Kia's motion is **GRANTED** with respect to Plaintiff's common-law negligence claim, and Count III is **DISMISSED**.

### C. Absolute and Qualified Public Nuisance (Counts I and II)

Aside from her negligence claim, Plaintiff brought two other common-law causes of action. Her first cause of action is absolute public nuisance. She alleges that Kia knowingly created and maintained a public nuisance by manufacturing and distributing automobiles that were "dangerously susceptible" to theft, and thus intentionally violated Federal Motor Vehicle Safety Standard 114, "which specifically requires automobiles be equipped with a starting system which, upon removal of the key, prevents 'steering, or forward self-mobility, of the vehicle, or both' as well as a 'transmission or gear selection control [which] cannot move from the park position, unless the key is in the starting system.'" (¶¶ 24–34). Her second cause of action is qualified public nuisance. She alleges that Kia's conduct "created and maintained a public nuisance" when it "negligently engaged in conduct or omissions which endangered or injured the health, safety, or comfort of [Yonis Said] and other area residents," despite being obligated to exercise care in ensuring its vehicles were safe to industry standards. (¶¶ 35–43).

Relying again on the statute's explanation that it "abrogate[s] all common law product liability claims or causes of action," Ohio Rev. Code § 2307.71(B), as well as its definition of product liability claims as including "any public nuisance claim or cause of action at common law," Ohio Rev. Code § 2307.71(A)(13), Kia argues that Plaintiff's public nuisance common law claims necessarily fail because they are explicitly abrogated and thus barred by statute. (ECF No. 5 at 11–12). In opposition, Plaintiff counters that reading the statute as a whole, Section 2307.71(A)(13) must be understood as codifying common-law public nuisance claims within the

statutory cause of action. (ECF No. 12 at 2–3). Thus, says Plaintiff, despite her complaint styling these causes of action as being under the common law, (*see* ¶¶ 24, 35), they "are, by definition, product liability claims governed by OPLA." (ECF No. 12 at 3). But if the Court were to determine that the claims "must be restyled for the purposes of clarity or notice," Plaintiff seeks leave to amend her complaint. (*Id.*). Kia replies that Plaintiff's position misreads the import of Section 2307.71(A)(13), which is *extinguishing* her claims, not preserving them. (ECF No. 14 at 10–11). Kia further maintains that any amendment would be futile because "there are no public-nuisance claims under the OPLA," and at any rate Plaintiff already has an OPLA claim through Count IV. (*Id.* at 11). Thus, Kia requests Counts I and II be dismissed with prejudice.

The Ohio Supreme Court has explained that "all product-based public nuisance claims are product-liability claims," and "all common-law public nuisance claims arising from the sale of a product have been abrogated by the Ohio Product Liability Act." *In re Nat'l Prescription Opiate Litig.*, 265 N.E.3d 1, 3, 9 (Ohio 2024). "Product-liability claims subsume *all* public-nuisance claims based on a product as specified in in R.C. 2307.71(A)(13)." *Id.* at 8 (emphasis added). Thus, Plaintiff cannot assert common-law nuisance claims, as such common law causes of action have been "extinguished" in Ohio by the product liability statute. *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 918 (N.D. Ohio 2009). Plaintiff cannot maintain her remaining common-law claims for public nuisance, and Kia's motion is also **GRANTED** with respect to these two claims; Counts One and Two are **DISMISSED**.

To the extent that Plaintiff attempts to salvage these claims by contending that they "are, by definition, product liability claims governed by OPLA" and just need to be "restyled for the purposes of clarity or notice," (ECF No. 12 at 3), the Court will not grant leave to amend on such a facile basis. Plaintiff is bound by her pleadings, and her complaint must show that she is "entitled

to relief." Fed. R. Civ. P. 8(a)(2). To make that showing, Plaintiff must provide "fair notice" of her claims "and the grounds upon which [they] rest[]." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). Her complaint did not give any notice to Kia that ostensible common law claims for absolute and qualified public nuisance were actually being brought pursuant to the Ohio Product Liability Act. (*See* ¶¶ 24–43). Thus, her pleadings undermine her novel position that these claims are statutory in nature. And Plaintiff's reliance on Section 2307.71(A)(13) is misplaced because it simply provides a definition for "product liability claims" as used in the statute. Plaintiff does not point to the applicable provision of the statute that she would use to bring amended nuisance claims.

This circuit's jurisprudence "manifests liberality in allowing amendments to a complaint," *Newberry v. Silverman*, 789 F.3d 636, 645–46 (6th Cir. 2015), and Plaintiff may seek to amend her complaint by a proper motion brought pursuant to Fed. R. Civ. P. 15(a)(2). But the Court will not grant Plaintiff leave to amend based on a perfunctory request embedded in a response brief.

**D. Product Liability (Count IV)**

Next, Plaintiff brings an Ohio Product Liability Act claim for defective design, alleging that Kia failed to design and manufacture its vehicles to industry-standard safety measures that would mitigate the risks of vehicle theft. (¶¶ 59–69). Under OPLA, "a product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation . . . exceeded the benefits associated with that design or formulation." Ohio Rev. Code § 2307.75(A).

Kia challenges whether the design was defective. It points to a carveout in the statute, which provides that "[a] product is not defective in design or formulation if the harm . . . was caused by an inherent characteristic of the product which is a generic aspect of the product that

cannot be eliminated without substantially compromising the product's usefulness or desirability." Ohio Rev. Code § 2307.75(E). Kia argues that Plaintiff's product liability claim thus necessarily fails "because the harm to [Yonis Said] was caused by an inherent characteristic of the Kia Soul that is a matter of common knowledge—its capacity to generate speed and force which, when recklessly abused, may inflict injury." (ECF No. 5 at 12). As a matter of law, says Kia, the Kia Soul could not have been defective because the injury was "immediately caused" by an inherent characteristic of all automobiles. (*Id.* at 12–15).

Mainly relying on *Moshi*'s analysis and foreseeability arguments, Plaintiff counters that only focusing on the events *immediately* prior to Yonis Said's death "intentionally misrepresents the [complaint's] allegations" and the law. (ECF No. 12 at 3–5). Plaintiff also rejects the applicability of Section 2307.75(E), arguing that had Kia manufactured the Kia Soul with an engine immobilizer anti-theft device, it could have addressed the risk of unauthorized and dangerous use of the vehicle. (*Id.* at 8–9). In reply, Kia reiterates that the theft of the Kia Soul and its unauthorized and dangerous operation constituted the car's condition, but the harm to Yonis Said was caused by its inherent capacity for speed. (ECF No. 14 at 8–9).

Kia's argument is alluring but ultimately unavailing. Yonis Said was not killed by a driver who was driving a vehicle in excess of the speed limit. Instead, he was killed by the driver of a *stolen* Kia Soul, a car that Plaintiff alleges was designed and manufactured without "common anti-theft technology." (¶ 13). Plaintiff does not seek damages because Yonis Said was struck and killed by an automobile moving at high speed; rather, she seeks to recover because Yonis Said was struck and killed by a stolen Kia Soul that, by design, lacked basic anti-theft features. As a matter of Ohio law, "a product may be defective in design if the manufacturer fails to incorporate feasible safety features to prevent foreseeable injuries." *Cincinnati*, 768 N.E.2d at 1147; *accord Perkins*

*v. Wilkinson Sword, Inc.*, 700 N.E.2d 1247, 1250–51 (Ohio 1998). Based on Plaintiff's allegations, the Kia Soul's vulnerability to automotive theft is not "a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability." Ohio Rev. Code § 2307.75(E).

To focus on the speed of the Kia Soul is to distract from Plaintiff's allegations, which are that Yonis Said was killed by a stolen car driven off-road by Shute in an attempt to elude police. Car "[t]heft is the very foreseeable conduct that *anti-theft devices* specifically protect against," *in re Kia*, 2024 WL 4184059, at *6, and "theft-related accidents may well count among the hazards that make a car's design defective." *Moshi*, 155 F.4th at 658. Construing the complaint in Plaintiff's favor, its allegations raise the reasonable inference that Yonis Said's death was caused by an automobile designed in such a way that it lacked anti-theft safety measures that would have been feasible to implement, and could have prevented foreseeable injuries arising from theft. Kia's argument based on Section 2307.75(E) fails. Count IV survives, and Kia's motion is **DENIED** with respect to it.

**E. Wrongful Death and Survival (Counts V and VI)**

Finally, Plaintiff brings claims for wrongful death and survival. (*See* ¶¶ 70–75). Kia argues that Plaintiff's derivative wrongful-death and survival claims must fail because her underlying substantive claims in the first four Counts fail. (ECF Nos. 5 at 15; 14 at 12). Plaintiff does not oppose Kia's analysis, only its application in this case, asserting that the survival of underlying Counts precludes dismissal of Counts Five and Six. (ECF No. 12 at 15).

Because Count Four survives, Counts V and VI also survive. Kia's motion is **DENIED** with respect to these claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant Kia America, Inc.'s Motion to Dismiss (ECF No. 5) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** with respect to the common-law claims for absolute and qualified public nuisance and negligence; those claims are **DISMISSED**. The Motion is otherwise **DENIED**; Plaintiff Luley Musa may proceed on her claims for product liability, wrongful death, and survival.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: November 3, 2026**